In the Matter of Scott STORMS, Respondent.

No. 49S00–1311–DI–747.

Supreme Court of Indiana.

Feb. 3, 2014.

*PUBLISHED ORDER APPROVING STATEMENT OF CIRCUMSTANCES AND CONDITIONAL AGREEMENT FOR DISCIPLINE*

Pursuant to Indiana Admission and Discipline Rule 23(11), the Indiana Supreme Court Disciplinary Commission and Respondent have submitted for approval a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating agreed facts and proposed discipline as summarized below:

**Stipulated Facts:** Respondent held the positions of General Counsel and Chief Administrative Law Judge ("ALJ") at the Indiana Utility Regulatory Commission (the "IURC"). Respondent actively participated in matters and hearings involving Duke Energy Indiana, Inc. ("Duke"), during March through September of 2010 ("Relevant Period"). It is Respondent's actions during the Relevant Period that give rise to this disciplinary action.

Kelley Karn, a Deputy General Counsel with Duke, told Respondent on March 31, 2010, that Duke would have an attorney opening. Later, Karn told Respondent that the attorney position was posted on Duke's website and would be open for applications until April 20, 2010. Respondent and Karn discussed the general requirements of the position over lunch. Respondent promptly told the IURC Chairman, David Lott Hardy, that he in-

tended to screen off all matters involving Duke so that he could apply for the job. Chairman Hardy, however, told Respondent that he was not to screen off of his Duke cases or apply for the Duke attorney position because it was not an opportune time.

Michael Reed, then Commissioner of the Indiana Department of Transportation and a prior executive director of the IURC, learned of a possible executive opening at Duke in early March 2010. (Reed accepted the position of president of Duke in May 2010.) After learning that there was also an open attorney position, Reed told Respondent in an April email that "[m]y sense is [that] they are very interested in you."

Respondent asked Karn whether he could apply for the position after the deadline. Karn told Respondent that he would have to apply by the deadline, but the deadline was flexible. On April 20, 2010, Respondent uploaded his cover letter and resume onto Duke's website, though he did not submit an application for the open attorney position. After Reed began working as president of Duke, he sent Respondent an email on June 27, 2010, advising Respondent to "[h]ang in there, still think this will get done."

On July 1, 2010, Karn told Respondent that Duke would not consider hiring anyone from the RJRC for its vacant legal position, but Reed called Respondent later the same day and said Karn's representation might not be correct. During July 2010, Reed worked without Respondent's knowledge to convince Duke to consider Respondent for the attorney position. On July 27, 2010, Reed sent Respondent an email (copying Chairman Hardy) stating, "Houston,,, [sic] we have (almost) landed! (Yea !!!)" On July 30, 2010, Karn told Respondent that the Duke attorney posi-

tion was reopened and he could apply if he was interested.

Respondent then obtained Chairman Hardy's consent to apply for the position and to screen off his Duke cases. Chairman Hardy reassigned Respondent's Duke cases on August 5, 2010. Respondent then submitted his application for a position in Duke's legal department, and he was formally offered the position on August 31, 2010.

On August 27, 2010, Respondent requested a formal advisory opinion from the Indiana State Ethics Commission regarding his ability to accept a position with Duke, pursuant to Ind.Code § 4–2–6–9. In his testimony before the Ethics Commission, Respondent did not provide information concerning his communications with Duke during the Relevant Period. On September 17, 2010, the Ethics Commission sent Respondent a favorable decision. Respondent accepted the Duke position and began work there on September 27, 2010. (He was terminated by Duke in mid-November of 2010.)

On October 14, 2010, the state's Inspector General filed a complaint with the Ethics Commission, alleging that Respondent had violated conflict of interest rules by participating in IURC decisions involving Duke during the Relevant Period. The Ethics Commission issued its Final Report on May 12, 2011, in which it determined that Respondent had violated Ind.Code § 4–2–6–9, imposed a penalty of $12,120.00 (triple the amount that he obtained in increased salary during his employment at Duke), and banned Respondent from future employment with the State of Indiana. Respondent filed a Verified Petition for Judicial Review in the Marion Superior Court, which affirmed on January 25, 2012.

*Aggravating and mitigating facts.* The parties cite no facts in aggravation. They

cite the following facts in mitigation: (1) Respondent has no prior disciplinary history; (2) Respondent was cooperative with the disciplinary process; (3) Respondent has fully complied with the order issued by the Indiana State Ethics Commission; (4) Respondent could not independently screen off docketed cases; (5) Respondent did not testify about his communications with Duke during the Relevant Period based on statements during that period that Duke did not intend to consider attorneys from the IURC for the position; (6) an internal IURC audit concluded that there was no evidence that Respondent exerted undue influence in his decisions in Duke cases; and (7) Respondent made an effort to comply with the state ethics rules applicable to the IURC. The parties state that Respondent believed that, under the Ethics Commission's Decision No. 10–1–7, it was necessary to screen off cases only after being contacted by a utility in response to the submission of a resume.

The Court also notes that Respondent has already suffered considerable penalties for his misconduct, including a fine of over $12,000 and banishment from any future state employment. Under the American Bar Association's Standards for Imposing Lawyer Sanctions (as amended in 1992), the "imposition of other penalties or sanctions" may be considered a factor in mitigation. See Standard 9.32(k).

**Violation:** The parties agree that Respondent violated Indiana Professional Conduct Rule 1.11(d), which states: "Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee . . . shall not . . . negotiate for private employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and substantially. . . ."

**Discipline:** The parties propose the appropriate discipline is a public reprimand. The discipline imposed might have been more severe had this matter been submitted without the Commission's agreement to the proposed discipline. However, in light of the substantial mitigating factors in this case and the Commission's assessment that the proposed discipline is sufficient under the circumstances of this case, the Court now approves the agreed discipline and imposes **a public reprimand** for Respondent's misconduct.

The costs of this proceeding are assessed against Respondent.

The Clerk is directed to forward a copy of this Order to the parties or their respective attorneys and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this order to the Court's website, and Thomson Reuters is directed to publish a copy of this order in the bound volumes of this Court's decisions.

All Justices concur.